UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                                        No. 12-205

TONTA J. OCTAVE ET AL.                                     SECTION I

ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Tonta J. Octave ("Octave"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  The government has filed an opposition.[2]

For the following reasons, the Court concludes that an evidentiary hearing is not required,[3] the motion is **DENIED**, and defendant's post-conviction application is **DISMISSED WITH PREJUDICE.**

BACKGROUND

On November 14, 2012, Octave was convicted by a jury of counts 1 and 4 of the five-count third superseding indictment.[4]  Count 1 charged that Octave knowingly and intentionally

---

[1] R. Doc. No. 129.
[2] R. Doc. No. 132.
[3] An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citing *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980)).  "A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'"  *Id.* (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)); *see also United States v. Arledge*, 597 F. App'x 757, 759 (5th Cir. 2015).  The record of this case conclusively shows that Octave is not entitled to relief.
[4] Counts 2 and 3 of the third superseding indictment only charged Octave's co-defendant.  R. Doc. No. 40.  Both Octave and his co-defendant were acquitted of Count 5, which charged the

conspired with his brother, Kavis Octave, and others to distribute and to possess with the intent to distribute twenty-eight (28) grams or more of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.[5]  Count 4 charged that on or about March 29, 2012 Octave did knowingly and intentionally distribute twenty-eight (28) or more grams of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2.[6]  Prior to trial, the government also filed a bill of information alleging a prior felony conviction and requesting an enhanced penalty pursuant to 21 U.S.C. § 851(a).

On April 18, 2013, Octave was sentenced to 120 months imprisonment, as to counts 1 and 4, to be served concurrently.  The sentences imposed were the mandatory minimum sentences as prescribed by statute.

Octave appealed his conviction and sentence, challenging (1) the admission of his prior felony conviction, (2) the admission of statements made by a government informant who died prior to trial, (3) this Court's denial of his motion for a judgment of acquittal on the conspiracy charge based on insufficient evidence, and (4) the sufficiency of the evidence for his conviction on the single count of distribution.[7]  The U.S. Court of Appeals for the Fifth Circuit affirmed the judgment against Octave on August 14, 2014.[8]  Octave filed this motion to vacate, set aside, or correct his sentence on July 23, 2015, alleging that he received ineffective assistance of counsel. The government does not challenge the timeliness of Octave's § 2255 motion.

---

defendants with the same substantive offense as Count 4 but a separate alleged transaction.  R. Doc. No. 40.

[5] R. Doc. No. 40.

[6] R. Doc. No. 40.

[7] R. Doc. No. 119.

[8] R. Doc. No. 119.

**LAW AND ANALYSIS**

## I.      LEGAL STANDARDS

### A.  28 U.S.C. § 2255

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426–27 (1962).  Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222–23 (1952).  The inquiry does not extend to the misapplication of sentencing guidelines.  *See Williamson*, 183 F.3d at 462.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy."  *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)).  Pursuant to § 2255, the Court must grant a defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."  *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted).  "[T]he general rule [is] that claims not raised on direct appeal may not be raised on

3

collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a § 2255 proceeding. *Massaro*, 538 U.S. at 509; *see also, e.g., United States v. Johnson*, 124 F. App'x 914, 915 (5th Cir. 2005).

### B. Ineffective Assistance of Counsel

The U.S. Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Court articulated a two-part test that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Id.* at 697.

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test looks to the prejudice caused by counsel's allegedly deficient performance.  This requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In the context of alleged trial errors, the petitioner must show that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

The petitioner must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *See id.* at 697. A court is not required to address these prongs in any particular order. *Id.* If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

## II. ANALYSIS

Octave's § 2255 motion alleges ineffective assistance of counsel based both on counsel's failure to investigate and on counsel's lack of a trial strategy. The Court addresses each argument in turn.[9]

### A. Failure to Investigate

Octave claims ineffective assistance of counsel based on his counsel's failure to investigate two general issues: (1) the admissibility of the physical evidence in the case, and (2) the admissibility of a recorded conversation between Octave and a government informant.[10]

A defendant's counsel "has a duty to make a reasonable investigation of [the] defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Smith v. Dretke*, 422 F.3d 269, 283–84 (5th Cir. 2005) (citing *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997)). While defense counsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers," *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980), an attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). "A defendant who alleges a failure to investigate on the part of his counsel must allege with

---

[9] Octave supports each of his ineffective assistance of counsel claims with several overlapping theories. To avoid needless repetition, the Court addresses each argument under the ineffective assistance of counsel category where it most appropriately fits.

[10] R. Doc. No. 129-1, at 4, 5; R. Doc. No. 129-1, at 10.

specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

For the reasons below, the Court concludes that both of the alleged failures to investigate did not deny Octave the effective assistance of counsel.

### 1)      The admissibility of the physical evidence

Octave alleges that he received ineffective assistance of counsel when his attorney failed to conduct an adequate pretrial investigation into the facts of his case.  Specifically, he claims that his attorney "did not investigate the fact that no federal judge would issue a warrant" to search his home, so the government "shopped around outside of his jurisdiction" until it found a judge who was willing to sign the warrant.[11]  Furthermore, Octave argues that the address listed on the warrant was incorrect as it did not match the location the agents searched and that the location the agents did search was "out of the jurisdiction of the judge" who issued the warrant.[12]  Based on these alleged deficiencies, Octave believes that admitting the evidence obtained pursuant to this warrant violated his Fourth Amendment rights and that his attorney's performance was deficient in failing to have the evidence excluded.[13]

Octave does not offer any evidence to support his accusations that the search warrant was invalid.  The record reveals that the warrant was issued by a judge in Ascension Parish—the parish in which Octave resided—on the basis of an affidavit submitted by the Ascension Parish Sheriff's office and approved by the U.S. Attorney's Office for the Eastern District of Louisiana.[14]  Octave does not explain how or why the address listed on the warrant was allegedly incorrect.  He has not provided this Court with copies of the search warrant or affidavit and he

---

[11] R. Doc. No. 129-1, at 10.
[12] R. Doc. No. 129-1, at 10.
[13] R. Doc. No. 129-1, at 10.
[14] R. Doc. No. 116, at 248–49.

does not provide support for his argument that the evidence obtained as a result of the search warrant should have been excluded.  Octave offers no support for his claim that no federal judge would sign the warrant because it was deficient and that the warrant authorized a search of a location outside the jurisdiction of the state judge.[15]  Accordingly, his counsel's "failure" to file a motion to suppress evidence obtained pursuant to that search warrant does not support an ineffective assistance of counsel claim.  *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").

Octave also claims that his attorney was ineffective because he failed to have the drugs tested for fingerprints or DNA after the government informant gave them to Drug Enforcement Agency (DEA) agents.[16]  Octave does not, however, provide evidence as to what such tests would have revealed.  The law is clear that "speculation regarding what a DNA analysis may have shown is not sufficient to establish deficient performance on the part of the petitioner's attorney."  *Roddy v. Cain*, No. 11-CV-00730-BAJ-RLB, 2015 WL 1276460, at *10 (M.D. La. Mar. 19, 2015); *Harris v. Cain*, No. 12-297-SDD, 2014 WL 2465538, at *15 (M.D. La. May 30, 2014); s*ee Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (rejecting claim of failure to investigate when counsel did not test for "powder burns" where the petitioner "merely asserts that there might have been powder burns").

Moreover, "an attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."  *Strickland*, 466 U.S. at 687.  The results of a fingerprint or DNA analysis could have been more harmful than helpful to Octave's defense. Because Octave has not demonstrated what evidence a DNA or fingerprint test of the drugs

---

[15] As previously stated, Octave's residence was located in Ascension Parish and the search warrant was signed by a state judge in Ascension Parish.  R. Doc. No. 116, at 248–49.
[16] R. Doc. No. 129-1, at 14–15.

would have revealed, or how that would have changed the outcome of the trial, he fails to satisfy either of the *Strickland* factors in connection with his attorney's decision not to test the drugs.

### 2)     The admissibility of the videotape

Next, Octave challenges his attorney's investigation relative to a videotape that was admitted and played during trial.  Octave claims that if his attorney had conducted a pretrial investigation, he would have found evidence supporting a legal basis to exclude the videotape. Specifically, Octave alleges that there was no evidence that the voice on the videotape was Octave's and that, regardless, the individuals on the videotape did not discuss drugs.[17]   In addition to these arguments based on relevancy, Octave also argues that the videotape[18] contained inadmissible hearsay and that the admission of the portions in which the deceased informant spoke violated the Sixth Amendment's Confrontation Clause.

Octave cannot satisfy the *Strickland* test with respect to these arguments because the videotape and the edited audio recordings were properly admitted at trial.  "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."  *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (citations omitted).   Contrary to Octave's assertions, the recordings used at trial were relevant because

---

[17] R. Doc. No. 129-1, at 14–16.  Additionally, Octave claims the recordings were improperly altered and should have been suppressed because of authenticity issues.  R. Doc. No. 129-1, at 27–28.   While it is true that the recordings used at trial were edited in order to exclude inadmissible portions, there is nothing in the record to support Octave's assertions that the recordings were not accurate.   To the contrary, the government laid a proper foundation for introducing the recordings during the course of its direct examination of DEA Special Agent William Johnson.  R. Doc. No. 116, at 150–56.  Octave's counsel was not deficient in failing to challenge the authenticity of the recordings introduced at trial.

[18] In addition to the videotape there were also audio recordings introduced at trial.  The multiple recordings were the result of the law enforcement officers' placement of multiple recording devices on the informant.  R. Doc. No. 116, at 149–52.

there was testimony that they depicted a drug transaction[19] and there was evidence that the voice on the videotape belonged to Octave.[20]   Indeed, the government identified Octave as a participant in the recorded conversation by showing that his face was visible in the videotape.[21]

In addition, the portions of the recordings in which the informant was communicating with the government were not played at trial.  The only portions of the recordings that were admitted into evidence were Octave's statements—as an admission by a party opponent under Rule 801(d)(2)(A) of the Federal Rules of Evidence—and segments of the informant's statements to Octave for the limited purpose of providing context.  This Court provided a limiting instruction to that effect.  As the Fifth Circuit explained in denying Octave's appeal on this issue, "We have previously held that the admission of an unavailable informant's recorded conversations with defendants did not offend the Sixth Amendment if the informant's 'statements were part of a reciprocal and integrated conversation the agent had with the

---

[19] From the video recording, the jury could see the government informant following Octave into a bar.  From the audio-video recording footage, the jury could see Octave's face and hear him stating, "That's the two."  The videotape does not show the drugs themselves.  However, Special Agent Johnson testified that Octave's statement to the government informant, "That's the two," referred to the two ounces of cocaine base that the government subsequently recovered from the informant after his arranged meeting with Octave.  R. Doc. No. 116, at 244–45.

[20] Octave argues that his counsel was constitutionally ineffective for permitting Agent Johnson to identify Octave's voice as that heard in the video.  He advances this argument on the ground that the testimony "allowed the jury to conclude that [Agent Johnson] had applied his expertise" in identifying Octave's voice.  R. Doc. No. 129-1, at 18–19.  But Agent Johnson was never qualified as an expert and the government never indicated at trial that his testimony represented anything more than his own opinion.  Accordingly, it was not objectively unreasonable for Octave's attorney not to object to such testimony.

[21] R. Doc. No. 116, at 185.  To the extent Octave asserts that "it was apparent that [Agent Johnson] was confused as to the difference between Kavis [Octave] and Tonta [Octave] on the stand when questioned," and that his attorney should have challenged the Agent's identification of Tonta Octave on the video, R. Doc. No. 129-1, at 16, the Court is unpersuaded.  The testimony Octave refers to proceeded as follows: in response to the government's question "Who is that on the right of the screen?" Agent Johnson responded, "That's Kavis – excuse me, that's Tonta Octave."  R. Doc. No. 116, at 185.  The Court is not convinced that, but for Octave's counsel's failure to object to this testimony—a decision which the Court does not find objectively unreasonable—Agent Johnson's testimony would have been excluded on this basis.

defendant' and the jury was instructed 'to consider the statements [of the informant] only to provide a context for the statements of the defendant and not for the truth of the matters [he] asserted. *United States v. Cheramie*, 51 F.3d 538, 541 (5th Cir. 1995)."[22]   In short, Octave has articulated no constitutional or other legal bases which would support the exclusion of the admitted portions of the recordings.   Octave's counsel was not deficient in failing to object to the admission of the recordings into evidence.

## B.  Lack of Trial Strategy

Octave also challenges his counsel's lack of trial strategy in two areas: (1) failing to object to Special Agent Johnson's testimony linking Octave to drug distribution, and (2) failing to object to counsel for the government's identification of Octave to Agent Johnson during direct examination.   Because these are alleged trial errors, Octave must demonstrate that his "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   Furthermore, in order to succeed on these claims, Octave must overcome a "strong presumption" that his counsel's decisions were professionally competent. *Strickland*, 466 U.S. at 689.

### 1)       Failure to object to Special Agent Johnson's testimony

Octave claims that his attorney was deficient because unfavorable and inadmissible testimony was introduced into evidence as a result of his attorney's cross examination of Agent Johnson.[23]   Octave refers to an exchange in which his attorney posed a series of questions to Agent Johnson during which Agent Johnson opined that Octave had intended the phrase "That's the two" to refer to two ounces of cocaine base.[24]   This opinion had not been testified to on direct

---

[22] R. Doc. No. 119, at 7–8.
[23] R. Doc. No. 129-1, at 11.
[24] R. Doc. No. 116, at 245: 1–25.

examination.    However, because Octave's counsel had "opened the door," on re-direct examination the government was able to elicit further testimony from Agent Johnson regarding the basis for this opinion.[25]  For the following reasons, the Court concludes that these exchanges, which were admittedly brought about as the result of Octave's counsel's cross examination, did not "deprive [Octave] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

First, Octave's counsel's decision to attempt to undermine on cross examination the government's position that the video recording had captured a drug transaction was not objectively unreasonable.  The Fifth Circuit has explained that the method and scope of cross examination is a type of trial strategy, even when counsel's questions on cross examination elicit unfavorable or otherwise inadmissible information.  *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011).  "Although one may want to question some of the tactical decisions made by [Octave's] counsel, [the Court] may not, in hindsight, second-guess counsel's strategy regarding [Agent Johnson's] testimony merely because an alternative course of action existed during trial." *Id.* Accordingly, Octave's allegation that his counsel was deficient because he inadvertently "opened the door" to unfavorable testimony on cross examination is without merit.

But Octave also argues that even if his counsel was not deficient in asking Agent Johnson the question, he certainly was deficient in failing to object to Agent Johnson's answer.[26]  Octave bases this objection on his belief that Agent Johnson should have been qualified as an expert before offering his opinion that the phrase, "That's the two," was drug jargon.  But even if Octave is correct that Agent Johnson should have been qualified as an expert before offering this

---

[25] R. Doc. No. 116, at 257–59.
[26] R. Doc. No. 129-1, at 16–17, 21.

testimony[27]—a finding this Court does not make—Octave nevertheless cannot demonstrate "a reasonable probability" that, but for his counsel's failure to object to Agent Johnson's answers on cross examination and the government's questions on re-direct examination, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Fifth Circuit has held that an experienced narcotics agent can testify as to the meaning of "drug jargon." *United States v. Griffith*, 118 F.3d 318, 321–22 (5th Cir. 1997). Agent Johnson had been employed as a Special Agent with the DEA for twelve years and he had worked as a local narcotics officer for three years prior to that.[28]   He had been involved in hundreds of drug investigations and he had interviewed hundreds of drug traffickers.[29]   Agent Johnson stated that he was "very familiar with . . . the street language" and that he had heard this particular phrase used by drug traffickers numerous times before as a form of "drug jargon."[30]   It follows that Agent Johnson was almost certainly qualified to offer an expert opinion as to the meaning of drug jargon even if the government never proffered him as an expert.  Had Octave's counsel objected, there was no impediment to the government offering Agent Johnson as an expert.  Accordingly, this Court cannot conclude that had Octave's counsel objected, Agent Johnson's expert testimony would not have been admitted into evidence regardless.

Furthermore, based on its review of the evidence, this Court cannot state that there is a reasonable probability that the exclusion of the above-described portion of Agent Johnson's testimony would have resulted in a different outcome at trial.   Indeed, even without Agent

---

[27] The Fifth Circuit's recent opinion in *United States v. Haines* recognizes that "drug traffickers' jargon is a specialized body of knowledge, familiar only to those wise in the way of the drug trade, and therefore a fit subject for expert testimony."  No. 13-31287, 2015 WL 6080523, at *8 (5th Cir. Oct. 15, 2015)(internal quotations and citation omitted).
[28] R. Doc. No. 116, at 257: 16–20.
[29] R. Doc. No. 116, at 257–58.
[30] R. Doc. No. 116, at 258.

Johnson's testimony regarding "drug jargon," the jury would still have heard the audio-video recordings of the transaction and would have known that the government informant, having been previously searched with negative results, was in possession of two ounces of cocaine base immediately subsequent to his meeting with Octave.  They would also have known that this meeting occurred after the informant indicated to Kavis Octave the informant's desire to purchase two ounces of cocaine base.  Further, the jury would have remained aware that, while incarcerated, Octave admitted to another prisoner that he had sold cocaine base to the informant, and that when Octave was arrested he was attempting to flee with $27,000 in cash.  This Court cannot conclude that the totality of the evidence, even without the testimony regarding "That's the two," would probably have been insufficient to cause a jury to convict Octave.  Octave's argument therefore fails the second prong of the *Strickland* test.

### 2)   Failure to object to counsel for the government's in-court identification

Octave also alleges that he received ineffective assistance of counsel because his attorney did not object when counsel for the government identified Octave during Agent Johnson's testimony.[31]   Octave refers to the following exchange between the government and Agent Johnson:

| [The government]: | "Who is that on the right of the screen?" |
|---|---|
| [Agent Johnson]: | "That's Kavis -- excuse me, that's Tonta Octave." |
| [The government]: | "The same individual sitting at defense table wearing the blue shirt?" |
| [Agent Johnson]: | "Yes, sir."[32] |

---

[31] R. Doc. No. 129-1, at 11, 16.
[32] R. Doc. No. 116, at 185: 11–15.

The failure to object to this in-court identification of the defendant, even if erroneous, was not objectively unreasonable for two reasons.  First, Octave's counsel challenged Agent Johnson on cross-examination with respect to his identification of Octave in the government's video.[33]  This issue was therefore not completely overlooked by Octave's counsel, even if his failure to object was questionable.  Second, and more importantly, the failure to object did not prejudice Octave under the *Strickland* analysis.  Considering that Agent Johnson had already identified Octave as the individual in the video before he identified Octave as the individual in the courtroom, the Court cannot conclude that an objection would have created a reasonable probability that the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.

## CONCLUSION

For the foregoing reasons, the motion, files, and record of the case conclusively show that Octave is not entitled to relief.  *See Bartholomew*, 974 F.2d at 41.  Accordingly,

**IT IS ORDERED** that there be judgment in favor of the government and against defendant, and that defendant's petition is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, October 30, 2015.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[33] R. Doc. No. 116, at 245–47.